# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **CLIFFORD EARL ELLIOTT,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **6:11-cv-2286-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Clifford Earl Elliott ("Elliott") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Elliott filed his applications for Title II disability insurance benefits and

Title XVI Supplemental Security Income on August 20, 2008, alleging a disability onset date of March 30, 2007.  (R. 118-128).  Elliott alleges that he is unable to work due to depression, "a constant need to go to the bathroom," pain while standing, and prostatitis.  (R. 159).  After the SSA denied his applications on November 6, 2008, (R. 63-72), Elliott requested a hearing on November 10, 2008, (R. 77), which he received on June 14, 2010, (R. 30).  At the time of the hearing, Elliott was 55 years old, (R. 36), had a college degree, (R. 37), and past relevant work that included heavy, semi-skilled work as a stocker, heavy, unskilled work as a delivery driver and general laborer, and medium, semiskilled work as a correction/detention officer.  (R. 55-56).  Elliott has not engaged in substantial gainful activity since March 30, 2007.  (R. 18, 159).

After the ALJ denied Elliott's claims on July 27, 2010, (R. 13-29), Elliott submitted to the Appeals Council new evidence and a Request for Review on August 13, 2010, (R. 11).  The Appeals Council refused "to reopen and change the decision."  (R. 1, 3).  Elliott then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.  The ALJ's Decision

The ALJ initially determined that Elliott had not engaged in substantial gainful activity since his alleged onset date, and therefore met Step One. (R. 18). Next, the ALJ acknowledged that Elliott's severe impairments of benign prostatic hypertrophy and depression met Step Two.  *Id*.  The ALJ then proceeded to the next step, where she discussed only Elliott's depression, and found that Elliott did not satisfy Step Three since he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 19).  Although the ALJ answered step three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Elliott

> has the RFC [residual functional capacity] to perform a full range of work at all exertional levels.  [Elliott] is limited to repetitive, routine tasks.  He is able to perform work that needs little or no judgment and

> make simple, work-related decisions. [Elliott] can never interact with the public, but can occasionally interact with supervisors. [Elliott] can be around employees throughout the workday with occasional conversations and interpersonal interaction. Finally, [Elliott] is able to sustain concentration and attention for two hours at one time with normal breaks throughout an eight-hour workday. [Elliott] requires up to five restroom breaks during the day; three occurring during his regularly scheduled breaks with two additional unscheduled breaks.

(R. 21). In light of Elliott's RFC, the ALJ held that Elliott was "capable of performing past relevant work as a general laborer. This work does not require the performance of work-related activities precluded by [Elliott's RFC]." (R. 24). Although a negative answer at Step Four requires a finding that a claimant is not disabled, *see McDaniel*, 800 F.2d at 1030 ("A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"), the ALJ proceeded nonetheless to Step Five where she consulted with the vocational expert ("VE"):

> To determine the extent to which [Elliott's] limitations erode the occupational base of unskilled work at all exertional levels, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Elliott's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as cleaner, medium and unskilled [ ]; dishwasher, medium and unskilled [ ]; and machine tender, medium and unskilled [ ].

(R. 25-26). Based on the VE's testimony, the ALJ concluded that, considering

Elliott's age, education, work experience, and RFC, Elliott "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 26). Because the ALJ answered Steps Four and Five in the negative, the ALJ determined that Elliott is not disabled. (R. 26); *see also McDaniel*, 800 F.2d at 1030. It is this finding that Elliott challenges.

## V.  Analysis

Elliott contends that the ALJ committed reversible error by failing to (1) consider at Step Three his impairments in combination, (2) clarify the VE's testimony regarding daily restroom breaks and Elliott's RFC, and (3) consider at Step Five Elliott's impairments in combination based on the VE's testimony regarding Elliott's ability to work. Doc. 8 at 5-8. For the reasons stated below, this court finds that the ALJ's opinion is supported by substantial evidence.

*A.     Elliott's impairments in combination*

As it relates to Step Three, Elliott contends that the ALJ only considered his depression in finding that he does not have a combination of impairments that meets or equals a listing. Doc. 9 at 9. This argument is unpersuasive because the ALJ's statement that Elliott does not have an impairment or combination of impairments that meets or medically equals a listing "evidences [the ALJ's] consideration of the combined effect of [the claimant's] impairments." *Jones v.*

*Dep't of Health and Human Serv.*, 941 F.2d 1529, 1533 (11th Cir. 1991). Moreover, the ALJ only discussed Elliott's depression because there is no medical listing or equivalent for benign prostatic hypertrophy. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (Genitourinary Impairments 6.0 and 106). In other words, because Elliott cannot establish that he meets or equals a listing and is therefore disabled based on his benign prostatic hypertrophy, the ALJ had no reason to discuss it. Accordingly, the ALJ's finding that Elliott does not have "an impairment or combination of impairments that meets of medically equals" a listing is supported by substantial evidence.

B.   *The ALJ's Step Five Decision is supported by substantial evidence.*[1]

    1.   Daily Restroom Breaks

As it relates to Step Five of the sequential process, Elliott contends that the ALJ improperly relied on the VE's testimony that an employer of an unskilled general laborer would "probably" tolerate two unscheduled breaks per day because the testimony (1) was not "an unqualified endorsement of [Elliott's] ability to work if he needs five bathroom breaks per day," and (2) "assumes that [Elliott] can

---

[1] The ALJ found at Step Four the Elliott could perform his past relevant work and, therefore, was not disabled. (R. 25). However, because "there are other jobs existing in the national economy that [Elliott] is able to perform," in the alternative, the ALJ continued to Step Five. *Id.*

time his rest room visits to correspond exactly with his break times, or never need a sixth rest room break." Doc. 9 at 10.  This contention ignores that "[w]hether or how an employer might be willing (or required) to alter job duties to suit the limitations of a specific individual would not be relevant because [the ALJ's] assessment must be based on broad vocational patterns . . . rather than on any individual employer's practices."  Memorandum from Daniel L. Skoler, Associate Commissioner for Hearings and Appeals to Administrative Appeals Judges, reprinted in 2 SOCIAL SECURITY PRACTICE GUIDE, App. § 15C(9), pp. 15-401 to 15-402 (2011).  Rather, "[t]o support a fifth-step finding that an individual can perform 'other work,' the evidence (e.g., [VE] testimony) would have to show the job, which is within the individual's capacity because of the employer modifications, is representative of a significant number of such jobs in the national economy." *Id.*; *see also Eback v. Chater*, 94 F.3d 410, 412 (8th Cir. 1996).

      Based on the record before this court, the ALJ properly relied on the VE in making such a finding.  At the hearing, Elliott testified that his benign prostatic hypertrophy causes urinary frequency that (1) is dependent on his fluid intake, (R. 40), (2) causes a "sensation" below the waist when he lifts objects between 40 and 50 pounds, (R. 42), and (3) required him to leave his job post once per hour to urinate, (R. 41).  Subsequently, after the VE testified regarding Elliott's past

relevant semi-skilled and unskilled work, the ALJ presented the VE the following hypothetical:

> ALJ  If we had an [inaudible] He had no exertional limitations, who performed routine repetitive tasks, and who performed work that needed little or no judgment, comparably made simple work related decisions, any work sensitivity should be infrequent and [inaudible].  This individual should have no interaction with the public, could interact very simple, okay, with occasional conversations and interpersonal interaction, [inaudible] as well.  This individual will be able to sustain attention and concentration for two hour blocks of time with normal breaks in an eight hour day.  Would this individual be able to perform his independent past work?
>
> VE  This person as you've described in this hypothetical could return to his work [inaudible].
>
> ALJ  And would there be other work that this individual can perform?
>
> VE  Yes, ma'am.  You want examples?
>
> ALJ  Yes, sir.
>
> VE  Examples include [ ] cleaner. . . . This person could function as a dishwasher. . . .  This person could function as a machine tender. . . .
>
> ALJ  Now, in these positions, he had his past work at general labor, and the other position that you just indicated, or occupations, what would be the general allowance for restroom breaks?  Is there a general standard, or would they allow for, you know, a certain number of . . .
>
> VE  Generally they would, generally an employer, and this is not

> governed by the [Dictionary of Occupational Titles] of course -
> - Based on my experience with employers in Alabama,
> normally they expect employees to go to the bathroom on their
> regularly scheduled break, . . . . The one in the morning, the
> one at lunch time, and the one in the afternoon. However, if
> they had to go, they would tolerate, probably, two additional
> rest room visits - - during the day. Of course they were brief - -
>
> ALJ   Okay, was it as unscheduled breaks?
>
> VE   Correct. For unskilled ones.
> \* \* \* \*
> ALJ   All right. If we continue with that same individual, but they
> now would be off track 25% of the day, in addition to the
> regularly scheduled breaks, would they be able to sustain the
> work that you previously indicated?
>
> VE   No, ma'am.

(R. 56-58).

In light of the VE's testimony, the ALJ "conclude[d] that, considering [Elliott's] age, education, work experience, and [RFC], [Elliott] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 26). The ALJ's reliance on the VE's opinion to determine that Elliott can do past relevant work was proper. Significantly, the VE made clear that his opinion was "based on [his] experience with employers in Alabama." (R. 57). In other words, the VE's testimony is based on his personal knowledge of broad vocational patterns of individuals employed in unskilled

positions and, as such, was proper testimony for the ALJ to accept. *See Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999) (holding that the VE's testimony is proper where he stated that "allowing for an employee to alter between sitting and standing is a prevalent accommodation in the workplace."). Therefore, the ALJ's reliance on the VE's testimony was supported by substantial evidence.

As it relates to restroom breaks, Elliott contends also that he can not maintain concentration if required to wait to use the restroom only on breaks. Doc. 9 at 11. However, Elliott failed to cite any evidence in the record that substantiates his claim, and this court found none. In fact, Elliott's history of non-compliance with his medications, (R. 218, 237, 264, 283, 296, 319), further supports the ALJ's finding that Elliott's urological impairment does not impede his ability to work. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) ("[R]efusal to follow prescribed medical treatment without a good reason will preclude a finding of disability.") (citation omitted). Therefore, the ALJ properly considered Elliott's impairments and the ALJ's decision is supported by substantial evidence.

    2.    <u>The VE's hypothetical did not exclude improperly Elliott's alleged lifting restriction</u>.

Elliott contends next that the ALJ's hypothetical failed to include Elliott's lifting restrictions based on his "uncontradicted testimony that lifting anything

between 40 and 50 pounds would give him a sensation of needing to go to the bathroom immediately." Doc. 9 at 11; *see also* R. 41-42. The ALJ's hypothetical accounted for Elliott's depression (simple work decisions, no interaction with the public, occasional conversations and interpersonal interaction) and urinary frequency (regular and unscheduled breaks). (R. 56-58). To the extent the ALJ was required to account for Elliott's sensation when lifting, it is accounted for implicitly as it relates to Elliott's urinary frequency. Further, although this sensation may be uncomfortable, Elliott has not suggested how it limits his ability to work. Indeed, Elliott's hearing testimony is the only evidence in the record related to Elliott's sensation while lifting.[2] Therefore, the ALJ's hypothetical considered both of Elliott's impairments and constitutes substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted).

C.   *The ALJ's hypothetical considered Elliott's impairments in combination*

Lastly, Elliott contends that the ALJ "ignored the combination of impairments" when she "ignored the VE's testimony" that a claimant "off track 25% of the day" could not sustain employment. Doc. 9 at 11; (R. 58). Again, Elliott ignores that the ALJ's hypothetical included Elliott's depression, benign prostatic hypertrophy, and RFC, and that the ALJ prefaced the additional facts by

---

[2] Elliott testified that there is no pain associated with his urological issues. (R. 39).

stating that the hypothetical "continue[d] with that same individual." (R. 58). Further, to the extent that Elliott contends that he would be "off track 25% of the day" due to his restroom breaks and, therefore, could not sustain employment, again, the record evidence fails to establish that Elliott's impairments require that level of absenteeism.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Fuller is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

Done the 14th day of August, 2012.

_____
ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE